## LORD v. CITIZENS' STEAMBOAT CO.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

BROKERS—COMMISSIONS—CONTRACT—PERFORMANCE—EVIDENCE.

The south side of a pier rented by defendant to a lessee, with whom plaintiff had had negotiations for a lease of the north side, was 50 feet longer than the north side, and met the bulkhead line at an obtuse angle, while the north side met such line at an acute angle, thereby lessening the space in the slip. There was also a bulkhead line on the south side, available for the erection of a freight depot, but none on the north side; and, as a part of the negotiations resulting in the lease of the south side, defendant surrendered to the city its lease of the bulkhead, and a new lease was obtained directly from the city to defendant's lessee; the agreed rental therefor being deducted from the rent agreed to be paid for the south side of the pier. *Held*, that the south side of the pier was substantially different from the north side, which plaintiff had been employed to rent, and plaintiff, having taken no part in the negotiations for the south side, was therefore not entitled to recover commissions.

Appeal from Trial Term, Richmond County.

Action by George Osgood Lord against the Citizens' Steamboat Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, HOOKER, and MILLER, JJ.

Herbert Noble, for appellant.

Stephen Callaghan (Parker K. Deane, on the brief), for respondent.

MILLER, J. This action is brought to recover broker's commissions. The defendant, as lessee from the city of New York, occupied the south half of a pier, and sublet the north half. In November, 1901, anticipating the termination of the lease with its tenant on February 1, 1902, the defendant employed the plaintiff to procure a tenant, offering to lease said north side for $20,000 per year. After certain negotiations between the plaintiff and the proposed tenant, the Central Railroad of New Jersey, the proposed rental was increased at the request of the plaintiff to $21,000, and a specific agreement was made between the plaintiff and defendant that in case a lease should be effected at said rental the plaintiff should be paid 5 per cent. commission, and in addition $1,000 for each year of the term. The ensuing negotiations were finally terminated by a notice from said proposed tenant to the defendant to the effect that it was not then in a position to enter into a lease, and subsequently the defendant leased that portion of the pier to another company for a period of six months, with an option to continue during the term of the defendant's lease with the city, which period terminated in May, 1903, without the exercise of said option. In August, 1903, negotiations were reopened between the president of the defendant and an officer of the said Central Railroad of New Jersey, with the result that an agreement was made to lease the south side of the pier for the yearly rental of $24,000, which agreement was embodied in a lease executed by the parties October 1, 1903. It is undisputed that the plaintiff took no part in the negotiations of August, 1903, resulting in the lease; but he claims that his employment was never terminated, and that in fact he was the procuring cause, and upon that theory has recovered a judgment for the 5 per cent. commission and the extra compensation of $1,000 per year. He testifies that after the termination of the negotiations had prior to February, 1902, he had talks with the president of the defendant, in which he was requested to keep the proposition before the Central Railroad of New Jersey, with the view of ultimately effecting a lease, and that he frequently had talks with one Douty, an officer of said company—the last one being in February, 1903—the result of which he did not communicate to the defendant. Englis, the president of the defendant, with whom the plaintiff claims to have had the negotiations, testifies that he never saw him after February, 1902. Douty, called by the plaintiff, testifies that, so far as he was personally concerned, the matter dropped after February, 1903.

Both he and the plaintiff testify that their negotiations related to the north side of the pier, as is also established by the letters introduced by the plaintiff. Besler, the officer of the Central Railroad of New Jersey who conducted the negotiations resulting in the lease, testifies that the matter of leasing the south side of the pier was brought to his attention by another broker, a Mr. Joyce, through whom the negotiations were conducted, and that he did not know the plaintiff in the matter.

The finding of the jury that the plaintiff was the procuring cause of the lease is challenged as being against the weight of evidence. However, we need not consider this question, because, in another aspect of the case, the verdict is entirely unsupported by the evidence. The case was submitted to the jury upon the original contract of employment, which was, according to the plaintiff's own testimony, that, in case he effected a lease of the north side of the pier for $21,000, he should have 5 per cent. commission, and in addition $1,000 for each year of the term; and the court charged the jury that, unless the subject-matter of the lease was essentially and substantially the same, the plaintiff could not recover. Thus, for effecting a lease of the south side of the pier, concerning which his negotiations concededly had no relation, the plaintiff has recovered not only the regular broker's commission, but also the extra compensation, which, according to his own evidence, he was only to receive in case he effected a lease of another portion of the pier at a stipulated sum; and, testing the verdict by the rule charged by the learned trial court, unless there is evidence that the south side of the pier was essentially and substantially the same as the north side, the verdict must be set aside. The undisputed evidence is that the south side was 50 feet longer than the north side; that it met the bulkhead line at an obtuse angle, while the north side met the same line at an acute angle, thereby making the available space in the slip still less; that there was a bulkhead on the south side available for the erection of a freight depot, while there was none on the north side; that, as a part of the negotiations resulting in the lease of the south side, the defendant surrendered to the city its lease of the bulkhead, and a new lease was obtained directly from the city to the defendant's lessee, the agreed rental therefor being deducted from said sum of $24,000 agreed to be paid the defendant. The property leased was therefore essentially and substantially different from the property to which the specific agreement upon which the plaintiff was permitted to recover related. It is manifest, therefore, that the plaintiff has been permitted to recover upon a theory wholly unsupported by the evidence, and the judgment and order should therefore be reversed, and a new trial granted; costs to abide the event. All concur, except HOOKER, J., not voting.